IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION


| | | |
|---|---|---|
| BRIAN BUCKNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-3016-CV-S-ODS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |


ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING
BENEFITS


Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his applications for disability and supplemental security income benefits.  The Commissioner's decision is affirmed.


I.  BACKGROUND


Plaintiff is a 37-year-old male smoker with a 12th grade education and an employment history that includes work as a warehouse employee, nursing assistant, milker on a dairy farm, and taxi driver.  Plaintiff claims he is no longer able to work due to hypertension, sleep apnea, restless leg syndrome, headaches, anxiety, emotional problems, and acid reflux.

Plaintiff's chief complaint is hypertension.  Plaintiff first received medication for hypertension in April 2005, when Plaintiff's blood pressure was measured at 199/121 and 180/101.  At the time, was smoking 1 1/2 packs of cigarettes per day.  Plaintiff returned to the doctor in May 2005 and reported that he had been without his medication for 2 days and that he was experiencing sharp chest pain and anxiety.  By this point, Plaintiff reported that he was smoking 2 packs of cigarettes per day.

Plaintiff's blood pressure was measured at 175/123, 154/108, and 160/105. Plaintiff was discharged with instructions to take his medications for control of hypertension.

Although Plaintiff gained weight and continued smoking, Plaintiff's hypertension generally improved with medication treatment. As noted by Plaintiff's primary care provider, his blood pressure in October 2005 was 136/99 and in November 2005 was 135/97. A higher reading of 162/103 was noted in January 2006, but this was followed by a reading of 146/96 in February 2006, 149/106 in March 2007, and 150/90 in October 2007.

Plaintiff also received medical treatment for other complaints. In response to Plaintiff's claims of chest pain, doctors performed a chest x-ray which revealed "[q]uestionable mild cardiomegaly."[1]  A subsequent myocardial perfusion test and stress test revealed "[n]o evidence of myocardial scarring or of stress induced mycoardial ischemia"[2] and a "normal" left ventricular ejection fraction rate of 55%. Plaintiff also reported to his physician that he was experiencing headaches, chest pain, acid reflux, and anger management problems. Plaintiff received treatment for some of all of these conditions, including medication for depression. Thereafter, Plaintiff visited his physician numerous times for continuing treatment of his depression and other conditions.

When Plaintiff filed his applications for disability benefits, he completed a function report claiming how his illnesses limited his daily activities. According to Plaintiff, he was able to care for his son and girlfriend and provide for his own personal care. In addition, Plaintiff reported that he was able to clean, do some yard work, shop, watch television, play on the computer, and go out almost every day, although he was not able to play sports very often or drive after taking his medications. However, after his

---

[1]  "Cardiomegaly" is "[e]nlargement of the heart." Stedman's Medical Dictionary 281 (26th ed. 1995).

[2]  "Myocardial ischemia" is "inadequate circulation of blood to the myocardium, usually as a result of coronary artery disease." Stedman's Medical Dictionary 894 (26th ed. 1995). The "myocardium" is "[t]he middle layer of the heart, consisting of cardiac muscle." Stedman's Medical Dictionary 1167 (26th ed. 1995)

applications for disability were initially denied by the Commissioner, Plaintiff completed a subsequent disability questionnaire in which he claimed that an ordinary day for him was limited to watching television, walking around outside, and resting. In a written statement filed immediately prior to his hearing before an administrative law judge (ALJ), Plaintiff's live-in girlfriend reported that he ran out of breath easily, was "always tired," and could no longer watch the children for her. Plaintiff also testified before the ALJ that 2 to 3 days per week his high blood pressure would produce migraines so intense he would isolate himself in his room to avoid light or other people. In addition, Plaintiff testified that he suffered from "throbbing" back pain if he stood or sat for too long, as well as frequent panic attacks.

Geoffrey W. Sutton, Ph.D., a licensed psychologist, completed a psychiatric review technique form in which he confirmed that Plaintiff's medical records showed he was suffering from anxiety and depression. However, in assessing Plaintiff's functional limitation, Sutton concluded that Plaintiff's mental impairments only mildly limited his abilities to maintain social functioning and to maintain concentration, persistence, or pace. In addition, Sutton concluded that Plaintiff's mental condition did not limit Plaintiff's activities of daily living and resulted in no episodes of "[d]ecompensation."[3] In light of these findings, Sutton ultimately determined that Plaintiff's mental impairments were "[n]ot [s]evere."

After Sutton's report, Plaintiff's counsel arranged for a physical evaluation by Yung Hwang, M.D. In discussing Plaintiff's high blood pressure, Hwang noted that Plaintiff's headaches were less frequent so long as Plaintiff took his medication. Hwang also observed that Plaintiff had full range of motion in his upper extremities, full grip strength, and could lift 50 pounds occasionally. Nevertheless, Hwang concluded that Plaintiff was mildly restricted in his ability to push and pull and limited in his ability to reach and handle. Hwang also concluded that Plaintiff could stand and/or walk 4 hours in an 8-hour day (30 minutes at a time) and sit with normal breaks 4 hours in an 8-hour

---

[3] "Decompensation" refers to "[t]he appearance or exacerbation of a mental disorder due to failure of defense mechanisms." Stedman's Medical Dictionary 445 (26th ed. 1995)

day (30 minutes at a time). According to Hwang, Plaintiff's impairments and treatment would cause him to be absent from work 4 or more times per month.

At the ALJ's request, Plaintiff subsequently was evaluated by Thomas B. Corsolini, M.D. Corsolini recommended no physical limitations on Plaintiff's activity. Corsolini also noted that Plaintiff had a medical history of hypertension, but found that this condition was being "adequately treated." At the time of the examination, Plaintiff's blood pressure was 132/90.

Following Corsolini's evaluation of Plaintiff, the ALJ heard testimony from a vocational expert (VE). According to the VE, a hypothetical worker with the restrictions noted by Hwang–including the inability to reach and handle and a total of 4 absences per month–would not be able to find work. However, in response to a hypothetical that included all of Hwang's restrictions *except* the limitations on reaching and handling and the 4 expected absences per month, the VE testified that such a worker would be able to perform sedentary unskilled work as a credit card clerk and final assembler, jobs which existed in significant numbers in the national economy.

In denying Plaintiff's applications for benefits, the ALJ found that Plaintiff suffered from severe impairments, including hypertension, morbid obesity, degenerative disc disease of the lumbar spine, and mild cardiomegaly. The ALJ further found that Plaintiff was unable to perform his past relevant work, but that he retained the residual functional capacity to perform sedentary unskilled jobs. In assessing Plaintiff's physical limitations, the ALJ essentially accepted the restrictions found by Plaintiff's consulting physician–Hwang–except that the ALJ discounted Hwang's opinion that Plaintiff would be limited in reaching and handling and would miss at least 4 days of work per month. According to the ALJ, these conclusions were neither supported by Hwang's examination report or by other medical evidence in the record. In addition, the ALJ referenced Plaintiff's continued tobacco abuse and weight gain, the lack of objective medical evidence in the record supporting Plaintiff's complaints, and Plaintiff's record of "sporadic" earnings to find that Plaintiff's subjective complaints of pain and limitations were not credible. After considering Plaintiff's age, education, work experience, residual functional capacity, and the testimony of the VE, the ALJ concluded that Plaintiff was

not disabled.

## II.  DISCUSSION

"[R]eview of [the Commissioner's] decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir.1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir.1991).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Smith v. Schweiker*, 728 F.2d 1158, 1161-62 (8th Cir.1984).

Plaintiff first challenges the ALJ's determinations with respect to his depression and anxiety.  The ALJ found that Plaintiff's mental impairments were not "severe," relying in part on the fact that Plaintiff never required regular psychiatric or psychological treatment.  Plaintiff argues that the absence of regular psychiatric or psychological treatment is irrelevant because he received mental health treatment from his family physician.  However, the fact that Plaintiff never required more extensive treatment from a professional specializing in mental health indicates that the treatment he was receiving from his family care physician was effective and supports the ALJ's determination that Plaintiff's mental impairments were not severe.  *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (holding that impairments controllable or amenable to treatment do not support finding of total disability); *Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir. 1992) (holding that claimant's anxiety was not disabling where there was an absence of specialized treatment beyond prescription for mild anti-anxiety agent).  The ALJ's determination also finds support in the psychiatric review technique form completed by Sutton.  Sutton rated Plaintiff as having no limitations in his activities of

5

daily living, only mild limitations in his ability to maintain social functioning and maintain concentration, persistence, or pace, and no episodes of decompensation. These ratings indicate that Plaintiff's mental impairments were not severe. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Plaintiff argues that Sutton's evaluation, combined with Plaintiff's claim of frequent panic attacks and chest pain, suggests that his depression was severe, but Sutton's ratings *undermine* Plaintiff's claims of mental disability–they do not support them. Substantial evidence supports the ALJ's conclusions with respect to Plaintiff's depression and anxiety.

Plaintiff next argues that the ALJ failed to properly evaluate his credibility. In assessing a claimant's credibility, the ALJ must consider–but need not explicitly discuss–the following factors: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

According to Plaintiff, the ALJ failed to appropriately consider his daily activities. In listing Plaintiff's activities, the ALJ relied on the function report Plaintiff completed when he filed his applications. Plaintiff reported that he could do several activities, including caring for his son and girlfriend, some yard work, shopping, and occasionally playing sports. However, after Plaintiff's applications were denied by the Commissioner and Plaintiff requested a hearing before the ALJ, Plaintiff completed a disability questionnaire claiming, among other things, that he could no longer shop and that a typical day for him included nothing more strenuous than watching television and walking around outside for a short time. Thereafter, Plaintiff testified before the ALJ that he no longer could do yard work and that his only exercise was rolling around on the floor with the kids for awhile. Without citing any authority, Plaintiff essentially argues that the ALJ should have accepted these later allegations of increased impairment and disregarded the activities he previously claimed he could do in the function report.

Plaintiff also contends the ALJ failed to consider the side effects caused by medications. When he filed for disability in 2005, Plaintiff claimed that he was unable to

drive while on his medications. Plaintiff later completed a list of medications and claimed that many of them caused him to be drowsy. However, in a disability report completed in 2007, Plaintiff largely denied any side effects from his medications, and Plaintiff never reported these side effects to his doctors. Furthermore, at the hearing Plaintiff testified that he was able to drive 10 to 30 miles per week on a regular basis, never mentioning any side effects from his medications.

Although Plaintiff faults the ALJ for not considering the evidence just discussed, the ALJ was not required to discuss every single piece of evidence Plaintiff presented. *See Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993). In discounting Plaintiff's credibility, the ALJ focused on the lack of objective medical evidence in the record supporting Plaintiff's claims of disabling impairment, the lack of any attempt by Plaintiff to alleviate his problems by reducing his weight or quitting his 2-pack-per-day smoking habit, and Plaintiff's sporadic earnings record, which suggested that Plaintiff was not motivated to work. These are all sufficient reasons for rejecting Plaintiff's allegations of disabling pain and limitations. *See Finch v. Astrue*, 547 F.3d 933, 935-36 (8th Cir. 2008) (ALJ may discount testimony which is inconsistent with record as whole; credibility findings are for ALJ in first instance, and when ALJ explicitly discredits claimant and gives good reasons for doing so, his judgment is entitled to deference); *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is one factor ALJ may consider); *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (indicating that ALJ may properly consider claimant's failure to quit smoking as detracting from credibility); *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (noting that sporadic work history is relevant to the ALJ's credibility analysis). At most, Plaintiff has merely identified evidence which could have supported his claim of disability. This does not require reversal. *See Mitchell*, 25 F.3d at 714.

Plaintiff also argues the ALJ failed to expressly consider his girlfriend's written statement that he was tired all the time and could no longer watch the children for her. "[S]tatements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints of pain." *Willcockson v. Astrue*, 540 F.3d 878, 880-81 (8th Cir. 2008) (citation omitted). The Eighth Circuit has held that

an ALJ's failure to expressly consider lay testimony can constitute reversible error.  *Id.*; *see also Smith v. Heckler*, 735 F.2d 312, 316-17 (8th Cir. 1984) (reversing where ALJ failed to expressly consider "overwhelming" lay evidence that "plainly established" the claimant's disability).  However, the Eighth Circuit also has held that an ALJ's failure to specifically discredit a third party witness does not constitute reversible error if the ALJ has specifically discredited the claimant's testimony and the same evidence also supports discounting the testimony of the third party.  In these circumstances, the ALJ's failure to expressly consider the third party evidence is "inconsequential."  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).  Here, the same evidence that the ALJ used to discount Plaintiff's testimony also supports discounting Plaintiff's girlfriend's statement.  The ALJ's failure to give specific reasons for discounting Plaintiff's girlfriend's testimony is inconsequential.

In addition, Plaintiff faults the ALJ for failing to acknowledge that he was found to be disabled under Medicaid.  Plaintiff points to evidence establishing that at one time he was on Medicaid, but this does not necessarily mean that a government agency in Missouri found Plaintiff disabled.  For example, impoverished parents who live in Missouri with their children can receive Medicaid without being disabled.[4]  Plaintiff has not shown that the ALJ failed to consider evidence establishing his disability.

Lastly, Plaintiff argues the ALJ's residual functional capacity and hypothetical question erroneously excluded Plaintiff's complaints of depression, anxiety, and drowsiness from his medications.  However, an ALJ may omit alleged impairments from a hypothetical question when the record does not support the claimant's contention that his impairments significantly restrict his ability to perform gainful employment.  *Owen v. Astrue*, 551 F.3d 792, 802 (8th Cir. 2008); *see Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994) (holding that hypothetical question "need only include those impairments that the ALJ accepts as true").  Because the hypothetical question was properly formulated, the VE's testimony that Plaintiff could perform work existing in significant numbers in the national economy constitutes substantial evidence in support of the ALJ's conclusion

---

[4]  http://www.dss.mo.gov/fsd/maf.htm (last visited on December 29, 2009).

that Plaintiff is not disabled.

## III.  CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence.  The Court affirms the Commissioner's denial of benefits.
IT IS SO ORDERED.

                                        /s/ Ortrie D. Smith
                                        ORTRIE D. SMITH, JUDGE
DATE:  January 4, 2010                  UNITED STATES DISTRICT COURT